UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MARJORIE RAMSEY,

                                    Plaintiff,                      **OPINION & ORDER**

          - against -                                               No. 23-CV-8599 (CS)

CITY OF NEWBURGH, ORANGE COUNTY,

                                    Defendants.
------------------------------------------------------------x

<u>Appearances</u>:

Tanya Dwyer
Legal Services of the Hudson Valley
Peekskill, New York
*Counsel for Plaintiff*

Paul Svensson
Hodges Walsh & Burke, LLP
White Plains, New York
*Counsel for Defendant City of Newburgh*

Matthew Nothnagle
Chief Assistant County Attorney
Orange County District Attorney's Office
Goshen, New York
*Counsel for Defendant Orange County*

<u>Seibel, J.</u>

        Before the Court are the motions to dismiss of Defendants the City of Newburgh and the

County of Orange.  (ECF Nos. 30, 37.)  For the following reasons, the motions are GRANTED.

**I.       BACKGROUND**

        For purposes of this motion, the Court accepts as true the facts, but not conclusions, set

forth in Plaintiff's Amended Complaint, (ECF No. 27 ("AC")).

### A.  Facts

Plaintiff Marjorie Ramsey was the sole owner of a property in the City of Newburgh,

New York, where she has resided for 32 years.  (*See* AC ¶¶ 1, 12.)  She fell behind on her taxes,

(*id.* ¶ 12), and on September 30, 2022, the City seized the property in a tax foreclosure for an

unpaid tax lien of $23,000, and the deed was transferred to the City, (*id.* ¶¶ 1-2, 12).  Plaintiff has

not left the premises and the City is in the process of trying to evict her.  (*See id.* ¶¶ 11-14.)  She

alleges that the property was worth $264,000 on the day the City seized it and that she cannot

afford to relocate without access to the equity in the property.  (*Id.* ¶ 14.)  She alleges that the

City's retention of the excess value beyond what she owed in taxes violates the Takings and

Excessive Fines clauses of the federal and New York Constitutions.  (*See generally* AC.)

### B.  Procedural History

On September 29, 2023, Plaintiff commenced this lawsuit against Janice Gaston,

Comptroller of the City of Newburgh, Todd Venning, City Manager for the City of Newburgh,

and Steven Neuhaus, County Executive of Orange County.  (ECF No. 1.)[1]  On November 27,

2023, Gaston and Venning filed a letter requesting a pre-motion conference in anticipation of a

motion to dismiss, (ECF No. 12), and on December 1, 2023, Neuhaus did the same, (ECF No.

16).  On December 27, 2023, the Court held a pre-motion conference and granted Plaintiff leave

to amend the complaint.  (*See* Minute Entry dated Dec. 27, 2023.)  On February 16, 2024,

Plaintiff filed the AC.  (ECF No. 27.)  The instant motions followed.  (ECF Nos. 30, 37.)

---

[1] Plaintiff attempted to file the original complaint on that date, and again on October 5,
2023, but both filings were rejected by the Clerk of Court for filing deficiencies.  (*See* ECF Nos.
1, 3.)  She finally successfully filed on October 17, 2023.  (*See* ECF No. 6.)

## II.    **LEGAL STANDARD**

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008), *vacated and superseded on other grounds on reh'g en banc*, 585 F.3d 559 (2d Cir. 2009).[2] "Determining the existence of subject matter jurisdiction is a threshold inquiry, and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Id.* "When jurisdiction is challenged, the plaintiff bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists, and the district court may examine evidence outside of the pleadings to make this determination." *Id.* "The court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd on other grounds*, 561 U.S. 247 (2010).

When a defendant moves to dismiss both for lack of subject matter jurisdiction and on other grounds such as failure to state a claim upon which relief can be granted, the Court must address the issue of subject matter jurisdiction first. *See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

Ripeness is a jurisdictional inquiry, *see, e.g., Island Park, LLC v. CSX Transp.*, 559 F.3d 96, 110 (2d Cir. 2009), and accordingly the Court "must presume that [it] cannot entertain [Plaintiff's] claims unless the contrary appears affirmatively from the record," *Murphy v. New*

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

*Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005); *see Quick Cash of Westchester Ave. LLC v. Vill. of Port Chester*, No. 11-CV-5608, 2013 WL 135216, at *6 (S.D.N.Y. Jan. 10, 2013) ("[R]ipeness is a jurisdictional inquiry antecedent to a Court's ability to hear claims."). The concept of ripeness is "rooted in Article III's case or controversy requirement and the prudential limitations on the exercise of judicial authority." *S & R Dev. Ests., LLC v. Bass*, 588 F. Supp. 2d 452, 460 (S.D.N.Y. 2008). The ripeness doctrine "ensure[s] that a dispute has generated injury significant enough to satisfy the case or controversy requirement of Article III of the U.S. Constitution." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002). It also prevents courts from "entangling [themselves] in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur, depending on the final administrative resolution." *Id.* The ripeness requirement defers federal review of claims until they have "arisen in a more concrete and final form." *Murphy*, 402 F.3d at 347.

## III.   <u>DISCUSSION</u>

### A.   <u>Takings Clause</u>

"The Takings Clause of the Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides that 'private property' shall not 'be taken for public use, without just compensation.'" *Dorce v. City of N.Y.*, 608 F. Supp. 3d 118, 139 (S.D.N.Y. 2022) (quoting U.S. Const. amend. V), *motion to certify appeal denied*, No. 19-CV-2216, 2022 WL 3133063 (S.D.N.Y. July 18, 2022). "A property owner states a claim for a violation of the Takings Clause when the plaintiff adequately alleges that the government took the plaintiff's property for public use without paying for it." *Id.*

For the first cause of action – taking of private property without a valid public use – Plaintiff alleges that by foreclosing on her property, the City and the County have confiscated more property than was due and have no public use to support keeping her equity in the property, which exceeds the amount she owes in taxes and associated charges.  (AC ¶¶ 22, 25.)  For the second cause of action – taking of private property without just compensation – Plaintiff alleges that to effectuate just compensation, she is entitled to the surplus equity in her property based on its fair market value at the time of the taking.  (*Id.* ¶ 34.)

In *Tyler v. Hennepin Cnty., Minnesota*, the Supreme Court determined that the plaintiff had plausibly alleged a taking where the plaintiff had accumulated $15,000 in debt on her property, including $2,300 in unpaid taxes, and the county seized and sold the property for $40,000 and kept the remaining $25,000 for its own use.  *See* 598 U.S. 631, 635, 637 (2023); *see also Polizzi v. Cnty. of Schoharie*, No. 23-CV-1311, 2024 WL 1061503, at *6 (N.D.N.Y. Mar. 12, 2024) (plaintiffs plausibly alleged that county violated takings clause by retaining surplus proceeds from tax foreclosure sale).  The City argues that Plaintiff's takings claim is premature because a foreclosure sale has not been completed, and no taking of surplus can occur until after the property is sold and the surplus is retained by the City.  (ECF No. 39 ("Newburgh Mem.") at 7-8.)  The City also argues, (*id.* at 8), that the foreclosing government is only required to return proceeds from the sale in excess of the debts associated with the property, and therefore Plaintiff is not entitled to receive the difference between the debt and the fair market value of the property at the time of foreclosure, because the property that is taken is the surplus proceeds, not the real property, *see Rafaeli, LLC v. Oakland Cnty.*, 505 Mich. 429, 465-66 (2020).[3]  The City asserts,

---

[3] In its opening and reply briefs, the City purports to cite to and quote *Freed v. Thomas*, 976 F.3d 729 (6th Cir. 2020), for this and related propositions, but the quotations the City

and Plaintiff does not dispute, that it has not been able to market the property for sale because Plaintiff has resisted eviction proceedings and has been living in the house rent-free and tax-free since September 2022.  (Newburgh Mem. at 5-6; *see* AC ¶¶ 11-14.)

In *Tyler*, the Court held that a county cannot retain surplus money after it has sold a foreclosed property and satisfied the tax debt.  *See* 598 U.S. at 639-40.  Plaintiff concedes that she continues to occupy the property while fighting eviction, (AC ¶¶ 11-14), has alleged only that the property has been seized and the deed transferred to the City, and has not alleged that the City has sold or received any surplus money from the property.  But a tax foreclosure alone does not constitute a taking.  *Matter of Seelbach*, No. 2019/80001, 2024 WL 3734044, at *12 (N.Y. Sup. Ct. July 29, 2024) ("By its terms, *Tyler* accords each owner of real property subject to tax foreclosure a Takings Clause right to claim surplus funds, but *Tyler* does not question a taxing authority's power to obtain title to tax-delinquent property by deed in foreclosure.").  "[A] tax foreclosure proceeding can effectuate a taking only upon execution of a foreclosure judgment by which the taxing authority . . . becomes seized of the property's sale proceeds or value in excess of the unredeemed tax lien plus authorized costs."  *Id.*  As the City has not sold the property, Plaintiff's takings claim is not ripe.  *Tupaz v. Clinton Cnty., New York*, 499 F. Supp. 2d 182, 191-92 (N.D.N.Y. 2007) (plaintiffs' claim that county violated their constitutional rights by depriving them of right to surplus money not ripe because plaintiffs' property had not yet been sold), *aff'd sub nom. Miner v. Clinton Cnty., N.Y.*, 541 F.3d 464 (2d Cir. 2008).

The possibility that the City might keep the property for its own use after Plaintiff vacates it does not change this result.  In that situation, she would be entitled to the difference between

---

includes in its briefs are from *Rafaeli, LLC v. Oakland Cnty.*, 505 Mich. 429 (2020), not from *Freed*.  (*See* Newburgh Mem. at 8; ECF No. 40 at 2-3.)

the value of the property and what she owes the City, "just as if the Government had sold the property." *Tyler*, 598 U.S. at 643 (citing *United States v. Lawton*, 110 U.S. 146, 149-50 (1884)). But here, where Plaintiff has only alleged a foreclosure but not that the City has kept the property for its own use (or sold it), there has not yet been a taking. Accordingly, the takings claim is not ripe and must be dismissed without prejudice. *See Sirob Imports, Inc. v. Peerless Ins. Co.*, 958 F. Supp. 2d 384, 390 (E.D.N.Y. 2013) ("[I]f the case is not ripe, there is no subject matter jurisdiction and dismissal without prejudice is the proper disposition in the ripeness context."), *aff'd*, 558 F. App'x 32 (2d Cir. 2014) (summary order).[4]

## B. Excessive Fines Clause

For the fifth cause of action, Plaintiff alleges that the City and County have imposed an excessive fine by "[c]onfiscating the entire value of [her] property because of non-payment of smaller amounts of real estate taxes." (*See* AC ¶¶ 55-58, 65-68.) "To determine whether a financial penalty is excessive under the Eighth Amendment, courts in the Second Circuit use a two-step inquiry." *Dorce*, 608 F. Supp. 3d at 143. "First, a court must consider whether the payment or forfeiture at issue constitutes a fine, meaning that it is punitive in nature and not purely remedial." *Id.* "Second, a court weighs four factors to determine whether the fine is grossly disproportional to the underlying offense. . . . :

> (1) the essence of the underlying offense of the complainant and its relation to other criminal activity, (2) whether the complainant fits into the class of persons for whom the statute was principally designed, (3) the maximum sentence and fine that could

---

[4] Plaintiff could have sold the property herself in advance of the foreclosure, but having chosen not to do so, she now has to wait for the surplus. I do not understand the City to be disputing that she would be entitled to the surplus once one exists. If the City were to unreasonably delay in selling the property or determining to keep it for its own use, it seems to the Court that Plaintiff would have a remedy in an Article 78 proceeding in state court. But there is no indication, and Plaintiff does not allege, that the City has been dilatory. To the contrary, it appears that the eviction proceedings are the holdup.

have been imposed, and (4) the nature of the harm caused by the complainant's conduct.

*Id.*

The City again argues that Plaintiff's excessive fines claim is not ripe because the City has not sold the property or retained any surplus equity.  (Newburgh Mem. at 9-11.)  Plaintiff contends that her claim is ripe because her fine was "~240,000 dollars plus the sum certain that was owed to the Municipal Defendants when the property was condemned."  (ECF No. 42 at 6.) But the City has only foreclosed on the property and, at this point, has not received any proceeds. The City's foreclosure and seizure of the property alone does not constitute an excessive fine. *Tyler*, 598 U.S. at 637 ("States have long imposed taxes on property.  Such taxes are not themselves a taking, but are a mandated contribution from individuals for the support of the government for which they receive compensation in the protection which government affords.  In collecting these taxes, the State may impose interest and late fees.  It may also seize and sell property, including land, to recover the amount owed.").  As with the takings claim, until the surplus value of the property is realized by the City, there is no forfeiture constituting a fine. Plaintiff's excessive fine claim must also be dismissed without prejudice as unripe.[5]

---

[5] Separate from the merits of the claims, the County argues that the claims against it must also be dismissed because Plaintiff has not alleged any facts showing that the County had any role in the foreclosure that she alleges violated her rights.  (ECF No. 32 at 4.)  Indeed, the only facts that Plaintiff alleges as to the County are that it assesses annual taxes against property owners and that, upon information and belief, it is an active participant in the taking because the taking benefits the County.  (AC ¶¶ 3-5.)  That conclusion does not follow as a matter of logic, as benefiting does not equate to active participation.  Even if the County has somehow benefited from the City's actions, Plaintiff still has not alleged that the County had anything to do with the alleged taking of her property.  In her brief in opposition to the County's motion, Plaintiff argues that the FAC alleges that there is some sort of agreement between the City and the County regarding tax enforcement.  (*See* ECF No. 44 at 1; *see id.* at 2.)  Her failure to cite to the AC in that regard is telling, because there is no such allegation.  In any event, putting aside that a plaintiff cannot amend her complaint via her opposition to a motion to dismiss, *see, e.g., Budhani v. Monster Energy Co.*, No. 20-CV-1409, 2021 WL 5761902, at *3 (S.D.N.Y. Dec. 3, 2021),

### C.  State Law Claims

The "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction where all federal law claims are eliminated before trial.  *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  Having determined that all of the claims over which this Court has original jurisdiction should be dismissed, and having considered the factors set forth in *Cohill*, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law causes of action.  *See id.* (citing 28 U.S.C. § 1367(c)(3)). Accordingly, Plaintiff's state law claims are dismissed without prejudice.

### D.  Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018).  "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons.  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

---

Plaintiff provides no facts supporting the conclusion that the City was acting on behalf of the County or pursuant to an agreement with the County when the City foreclosed.  She cites to a section of the Orange County Charter that relates to the amount of the County tax levy and has nothing to do with foreclosures, let alone foreclosures by municipalities within the County.  (*See* ECF No. 44 at 2 (citing Orange County Charter § 4.08).)  Municipalities can be held liable under § 1983 if "action pursuant to official municipal policy of some nature caused a constitutional tort," *Monell v. Dep't of Soc. Servs. of the City of N.Y.,* 436 U.S. 658, 690-91 (1978), but here Plaintiff alleges no action by the County.  Because Plaintiff has not plausibly alleged any involvement of the County in the challenged conduct, her claims against it would be dismissed even if they were ripe.

Plaintiff has already amended her complaint, after having the benefit of Defendants' pre-motion letters, (ECF Nos. 12, 16), and the discussion at the December 27, 2023 pre-motion conference, (*see* Minute Entry dated Dec. 27, 2023).  In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend.  *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.  Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim."); *see also Baines v. Nature's Bounty (NY), Inc*., No. 23-CV-710, 2023 WL 8538172, at *3 (2d Cir. Dec. 11, 2023) (no abuse of discretion where plaintiffs "already amended their complaint once in the face of a pre-motion letter from Defendants," and then "requested leave to amend again in a single, boilerplate sentence without specifying what allegations they could add or how amendment would cure any deficiencies"); *Bardwil Indus. Inc. v. Kennedy*, No. 19-CV-8211, 2020 WL 2748248, at *4 (S.D.N.Y. May 27, 2020) (dismissing with prejudice where plaintiff amended following pre-motion letters and pre-motion conference that identified the deficiencies resulting in dismissal).

Moreover, Plaintiff has not asked to amend again or otherwise suggested that she is in possession of facts that would cure the deficiencies identified in this decision.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if [she] fails to specify . . . how amendment would cure the pleading deficiencies in [the] complaint."); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice "in the absence of any indication that

[plaintiff] could—or would—provide additional allegations that might lead to a different result . . . ."); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make complaint viable and plaintiffs did not request leave to amend); *GateGuard, Inc. v. Amazon.com Inc.*, No. 21-CV-9321, 2023 WL 2051739, at *21 (S.D.N.Y. Feb. 16, 2023) (denying leave to amend where plaintiff "already amended its complaint in response to [Defendant's] pre-motion letter detailing the bases for its anticipated motion to dismiss" and did not seek leave to amend again).  Indeed, the issues fatal to Plaintiff's Complaint are substantive and cannot be cured by re-pleading. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ('The problem with [plaintiff's] causes of action is substantive; better pleading will not cure it."); *Williams v. Smith*, No. 22-CV-1630, 2024 WL 3292725, at *18 (D. Conn. July 3, 2024) (denying leave to amend where, although unripe claims "theoretically may become justiciable at some point in the future . . . this is contingent on a change of circumstances; it is not a problem that may be solved by better pleading").

Accordingly, the Court declines to grant leave to amend *sua sponte*.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motions are GRANTED and Plaintiff's claims are dismissed without prejudice.  The Clerk of Court is respectfully directed to terminate the pending motions, (ECF Nos. 30, 37), and close the case.

**SO ORDERED.**

Dated:  October 8, 2024
    White Plains, New York

_____
    CATHY SEIBEL, U.S.D.J.